IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02481-REB-KLM

PROFESSIONAL SOLUTIONS INSURANCE COMPANY,

    Plaintiff,

v.

HARRY MOHRLANG,
LENORA MOHRLANG,
BRUCE A MOHRLANG,

    Defendants.
_____

**ORDER**
_____

This matter is before the Court on Plaintiff Professional Solutions Insurance Company's **Motion for Protective Order** [Docket No. 22; Filed June 2, 2008] ("Plaintiff's Motion"). Defendant Bruce A. Mohrlang (hereinafter "Defendant") filed a Response to Motion for Protective Order [Docket No. 24; Filed June 20, 2008] and Plaintiffs filed a Reply in Support of Motion for Protective Order [Docket No. 27;Ffiled July 3, 2008]. The Court has considered the pleadings and the applicable law and is fully advised in the premises. For the reasons set forth below, Plaintiff's Motion is **GRANTED in part and DENIED in part.**

**I. Background**

Plaintiff is an insurance company that issued a professional liability insurance policy to its insureds. *Complaint* [#1] ¶¶6, 8. Defendants asserted claims against Plaintiff's insureds relating to legal advice and representation provided by the insureds to

1

Defendants. *Id.* ¶11. Plaintiff and Defendants entered into a written settlement agreement regarding Defendants' claims. The settlement agreement intentionally left unresolved a dispute over interpretation of the insurance policy at issue and specifically contemplated quasi-judicial or judicial resolution of that dispute. *Id.* ¶14; *Plaintiff's Motion* [#22] at 4. The unresolved dispute is the subject of this litigation.

Plaintiff contends that Defendants' insurance claims are "related claims" under the policy, and therefore are subject to the coverage limit for a single claim. *Complaint* [#1] ¶13. On the other hand, Defendants contend that their claims constitute more than one distinct claim under the policy, and therefore they are subject to the aggregate claims limit. *Id.* ¶12. Plaintiff's Complaint in this action seeks a declaratory judgment declaring that Defendants' claims constitute related claims under the policy, and that they are therefore subject to the single-claim limit. *Id.* at 6.

Plaintiff objects to Defendant's discovery requests about: (1) Plaintiff's "corporate structure and return on equity"; (2) Plaintiff's "reserve information"; and (3) Plaintiff's "claim handling." *Plaintiff's Motion* [#22] at 1-11. Each of these categories of discovery requests is addressed below.

## II. Analysis

### A. Discovery Requests Relating to Plaintiff's "Corporate Structure and Return on Equity"

Defendant propounded an interrogatory and nine requests for admissions that seek information related to Plaintiff's "pre-tax return on equity," identification of Plaintiff's parent companies and affiliates and its date of incorporation.[1] Plaintiff contends that these

---

[1] The full text of the disputed discovery requests is as follows:

2

discovery requests are not reasonably calculated to lead to the discovery of admissible evidence. *Id.* at 2-8. Defendant asserts that the discovery requests are relevant to the issue of prejudgment interest. *Response* [#24] at 6-11.

Relevance is a threshold issue in deciding discovery disputes. Information is not discoverable unless it is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Although the scope of discovery is broad, the court will not permit a party to engage in a "fishing expedition" for information that will not lead to admissible evidence. *McGee v. Hayes*, 43 Fed. Appx. 214, 217 (10th Cir. July 22, 2002) (unpublished decision).

---

"Interrogatory 12: State NCMIC Insurance Company's pre-tax return on equity (ROE) beginning January 1, 2007 to the present. If NCMIC Insurance Company is able to provide a calculation of its pre-tax ROE on a monthly basis, please do so. If NCMIC Insurance Company's pre-tax ROE is not calculated on [sic] monthly basis, please provide the quarterly calculations of the pre-tax ROE. If NCMIC Insurance Company's pre-tax ROE is not calculated on a quarterly basis, please provide the annual calculations of the pre-tax ROE. Please remember to continue supplementing PSIC's response to this interrogatory through the date of trial."

"Request for Admission 3: Admit that Professional Solutions Insurance Company is a subsidiary of NCMIC Insurance Company."

"Request for Admission 4: Admit that NCMIC Insurance Company is a subsidiary of National Holdings, Inc."

"Request for Admission 5: Admit that National Holdings, Inc. is a subsidiary of NCMIC Group, Inc."

"Request for Admission 6: Admit that NCMIC Group, Inc. is a subsidiary of National Chiropractic Mutual Holdings Company."

"Request for Admission 7: Admit that Professional Solutions Insurance Company is a member of NCMIC Group, Inc."

"Request for Admission 8: Admit that PSIC was incorporated on May 11, 2001."

"Request for Admission 9: Admit that NCMIC Insurance Company's pre-tax return on equity for the year 2006 was 14.5%."

"Request for Admission 10: Admit that NCMIC Insurance Company's pre-tax return on equity for the year 2005 was 10.9%."

"Request for Admission 11: Admit that NCMIC Insurance Company's pre-tax return on equity for the year 2004 was 11.2%."

3

Based on my review of the pleadings, the information sought by Defendant *could* be relevant to this litigation in two circumstances: first, if the parties' settlement agreement provides for an award of prejudgment interest, or second, if such an award is permitted by statute or other law. Accordingly, the Court examines both the settlement agreement and applicable law to determine the relevance of the information sought.

The written settlement agreement signed by the parties is clear about the terms of settlement, including the amount of an "initial" payment by Plaintiff to Defendants under the policy, the remaining dispute between the parties, and the action to be taken to resolve that dispute ("PSIC shall elect either binding arbitration or a declaratory judgment action for determination of the Coverage Issue . . . ."). *Settlement Agreement* [#37] at 1-3 (filed under seal). The settlement agreement clearly establishes that the parties understood and agreed that the issue of Defendants' entitlement to additional policy proceeds would be decided by a judge or arbitrator, and that judgment would be entered depending on which party's interpretation of the policy prevails. The settlement agreement specifies only two possible outcomes: if Plaintiff wins, judgment will enter in its favor, and Plaintiff "shall not be responsible for payment of *any* sums to [Defendants] other than the initial payment . . . ." *Id.* at 4 (emphasis added). If Defendants win, judgment shall enter against Plaintiff in the amount of the available insurance proceeds for multiple claims, less a deductible. *Id.* The judgments specified by the settlement agreement in either event do not include prejudgment interest. Accordingly, an award of prejudgment interest is not a term of the parties' agreement.

Defendant does not dispute that the settlement agreement fails to address prejudgment interest. Instead, Defendant asserts that Colo. Rev. Stat. § 5-12-102(1) "is

4

a gap-filling provision that applies when, as here, there is no agreement on prejudgment interest." *Response* [#24] at 4. Defendant argues that the statute "requires an award of prejudgment interest on money that has been 'wrongfully withheld.'. . . Once the insured's liability for damages has been determined – either in a judicial proceeding or in a settlement with the insurer's consent – prejudgment interest begins to accrue on the amount that the insurance company owes under its policy." *Id.* at 3, 5 (citation omitted). Defendant apparently asserts that he is entitled to an award of prejudgment interest both on the agreed-upon payment reflected in the settlement agreement, and on any subsequent payment made if Defendants' interpretation of the policy prevails.

Defendant's argument suffers from three flaws. First, it is inherently inconsistent. On the one hand, by his participation in this litigation and the discovery process, Defendant affirms the agreed-upon procedure reflected in the settlement agreement. On the other hand, Defendant seeks to ignore the substance of the same agreement, which quite clearly does not provide for an award of prejudgment interest. Manifestly, Defendant's request for information which would allow him to calculate prejudgment interest is a likely precursor to a demand for such an award, despite the fact that there is no provision in the settlement agreement which allows for it. In my view, Defendant's discovery request is a precursor to a request that the Court rewrite the parties' agreement. It is beyond dispute that the Court cannot add terms to an agreement that were not included by the parties when the agreement was made. *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1152 (10th Cir. 2000).

Second, Defendant's argument is disingenuous in light of his own previous conduct in entering into the settlement agreement. By basing his argument for prejudgment interest

5

information on Colo. Rev. Stat. § 5-12-102, Defendant now suggests that Plaintiff's conduct in "withholding" policy proceeds was "wrongful," despite the fact that Defendant agreed to such conduct. Defendant cites to no legal authority supporting the notion that an insurer – or anyone else – can be guilty of "wrongfully withholding" money when the alleged creditor accepts some portion of it and consents to possession of another portion by the alleged wrongdoer while a legal dispute is resolved. The purpose of Colo. Rev. Stat. § 5-12-102 is to "encourage settlement and discourage responsible parties from delaying payment." *Grand County Custom Homebuilding, LLC v. Bell*, 148 P.3d 398, 400 (Colo. Ct. App. 2006). Application of the statute in circumstances where the parties have both settled and agreed to (at best) delayed payment is antithetical to that purpose.

Finally, in my view, Defendant seeks information that *may* be relevant only if the Court eventually holds that Defendants made unrelated claims under the policy, because only then could it be argued that Plaintiff "*wrongfully* withheld" money. The cases cited by Defendant do not support his assertion that pursuant to Colo. Rev. Stat. § 5-12-102, prejudgment interest accrues on insurance proceeds which are subject to a settlement agreement. Accepting a settlement payment without reservation for prejudgment interest extinguishes the creditor's right to prejudgment interest against the insurer. *Parker v. USAA*, Nos. 05CA2361 & 05CA2569, 2007 WL 1289614, at *6 (Colo. Ct. App. May 3, 2007) (unpublished decision), *cert. granted on other grounds*, 2008 WL 177477 (Colo. Apr. 21, 2008). Thus, Defendant is not entitled to prejudgment interest on the settlement proceeds which have already been paid. At best, Defendant may be entitled to prejudgment interest only on the unpaid portion of insurance proceeds *after* a court ruling favorable to Defendants' position. The ultimate resolution of the question regarding whether

6

Defendants' claims are "related" or not is likely to be made by the District Court, and will be made at a later time. Therefore, it is premature to hold at this time that information regarding calculation of prejudgment interest is relevant to the subject matter of the litigation. *See, e.g.*, Fed. R. Civ. P. 69(a)(2); *Sears v. Atchison, Topeka & Santa Fe Ry.*, Nos. W-4963 & W-446, 1982 WL 500, at *4 (D. Kan. Dec. 1, 1982) (unpublished decision).

Accordingly, for the reasons cited above, the portion of Plaintiff's Motion seeking a protective order regarding discovery requests related to Plaintiff's return on equity and corporate structure is **granted.**

### B. Discovery Request Relating to Plaintiff's Reserve Information

Defendant propounded a request for production that seeks information related to Plaintiff's insurance reserves for the underlying claims.[2] Plaintiff contends that reserve information is not discoverable because it is not reasonably calculated to lead to the discovery of admissible evidence. *Plaintiff's Motion* [#22] at 9. I disagree.

The Tenth Circuit has rejected the use of loss reserves as sufficient evidence to establish bad faith breach of an insurance policy. *Signature Dev. Cos. v. Royal Ins. Co. of Am.*, 230 F.3d 1215, 1223-24 (10th Cir. 2000). However, the Court did not conclude that information regarding loss reserves is never relevant. *Bishelli v. State Farm Mut. Auto. Ins. Co.*, No. 07-cv-00385, 2008 WL 280850 at *2 (D. Colo. Jan. 31, 2008) (unpublished decision). Nor has the Colorado Supreme Court held that reserve information is never discoverable. In *Silva v. Basin Western, Inc.*, 47 P.3d 1184, 1189 (Colo. 2002), the Court

---

[2] The full text of the disputed Request for Production is as follows:

"Request for Production 14: Produce documents showing PSIC's reserves for the Insureds' Claims between January 4, 2006 and October 24, 2007."

7

held that "reserve information is subject to the same test for discoverability as any other matter."

In this case, Defendant has made a specific allegation regarding the relevancy of Plaintiff's reserve information. Defendant asserts that Plaintiff's claims guidelines require that "'multiple files [should be] set up' when there are 'two risks or more risks with separate limits.' In opening a new claim, the guidelines direct claims personnel to establish and obtain approval of opening reserves." *Response* [#24] at 13. Thus, Defendant argues, "the existence of two separate reserves would indicate that [Plaintiff] interpreted [Defendants'] claims as distinct claims with separate coverage limits." *Id.* Plaintiff responds that its initial categorization of Defendant's underlying claims "has absolutely nothing to do with the sole issue before the Court in this declaratory judgment action – which is how the terms of a contract, the [insurance policy], apply to the facts of the underlying claims asserted by the [D]efendants." *Reply* [#27] at 9.

Plaintiff concedes that the terms of its contract – the insurance policy – are in dispute. When the terms of a contract are in dispute, the Court may rely on evidence of the parties' post-contractual conduct to determine its meaning. *See, e.g.*, *Public Serv. Co. v. City & County of Denver*, 387 P.2d 33, 46 (Colo. 1963). Therefore, documents showing Plaintiff's reserves for Defendants' claim or claims are likely to lead to the discovery of admissible evidence regarding its interpretation of the insurance policy and hence, the meaning thereof. Accordingly, the portion of Plaintiff's Motion seeking a protective order regarding reserve information is **denied.**

C. **Discovery Requests Relating to Plaintiff's Claim(s) Handling**

Defendant propounded four requests for admissions which seek information relating

8

to how Plaintiff made coverage decisions regarding Defendants' claims.[3]  Plaintiff contends that this information is not relevant to the subject matter of the litigation and is protected work product.  *Plaintiff's Motion* [#22] at 10-11.  Defendant responds that the discovery requests relate to demand letters and draft complaints "that describe the factual and legal basis for the claims made against [Plaintiff's] insureds," and are the "operative" documents which case authority requires that the Court examine when resolving "indemnity disputes."  *Response* [#24] at 11.  Plaintiff rebuts that argument by contending that "this is not a bad-faith case or a breach-of-contract action where PSIC's claims-handling procedures and processes might be at issue.  The information considered by PSIC in reaching its determination does not make any disputed issue more or less likely."  *Reply* [#27] at 7.

I agree with Defendants.  The subject of this declaratory judgment action is how the insurance policy, a contract by any other name, should be interpreted.  Plaintiff seems to assert that the Court's decision can be based solely on the sterile language of the policy itself, without the illumination provided by evidence of how the parties acted in interpreting the document.  If that were the case, the parties would likely not have needed the assistance of the Court, given their and their counsel's undeniable ability to read the policy

---

[3] The full text of the disputed requests for admissions is as follows:

"Request for Admission 36: Admit that, in making coverage decisions with respect to the Insureds' Claims, PSIC considered the letter from Ross W. Pulkrabek to Timothy P. Schimberg, Esq. and Andrew R. McLetchie, Esq. dated June 14, 2007 attached hereto as Exhibit J."

"Request for Admission No. 37: Admit that, in making coverage decisions with respect to the Insureds' Claims, PSIC considered the draft complaint attached hereto as Exhibit K."

"Request for Admission No. 42: Admit that, in making coverage decisions with respect to the Insureds' Claims, PSIC considered the letter from Eric R. Jonsen to Timothy P. Schimberg, Esq."

"Request for Admission No. 43: Admit that, in making coverage decisions with respect to the Insureds' Claims, PSIC considered the draft complaint attached hereto as Exhibit J [sic]."

language. Evidence of the parties' conduct in interpreting or applying the terms of the policy is relevant to the issue before the Court. *See Echo Acceptance Co. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1085-86 (10th Cir. 2001); *Public Serv.*, 387 P.2d at 46. Moreover, Plaintiff fails to respond to Defendant's contention that the information sought cannot be protected by the work product doctrine, because the doctrine does not apply to an insurer's activities in the ordinary course of adjusting claims. *Response* [#24] at 12; *Hawkins v. Dist. Court*, 638 P.2d 1372, 1378 (Colo. 1982). As Plaintiff has the burden of establishing the applicability of the work product doctrine and has failed to do so, this contention is rejected. Fed. R. Civ. P. 26(b)(5); *Ledgin v. Blue Cross & Blue Shield*, 166 F.R.D. 496, 498 (D. Kan. 1996). Accordingly, the portion of Plaintiff's Motion seeking a protective order regarding claims handling information is **denied.**

Accordingly, IT IS HEREBY **ORDERED** that Plaintiff's Motion is **GRANTED** as to Interrogatory No. 12 and Requests for Admissions Nos. 3, 4, 5, 6, 7, 8, 9, 10 and 11 and **DENIED** as to Request for Production No. 14 and Requests for Admissions Nos. 36, 37, 42 and 43.

Dated: August 26, 2008

                                                                s/ Kristen L. Mix
                                                                Kristen L. Mix
                                                                United States Magistrate Judge